# Friedman, et al., Appellants, v. Hollander Brothers Drug Company.

*Trade marks and trade names—Licensee—Right to exclusive use —Abandonment.*

A bill in equity to restrain the use of a trade name in connection with the sale of bitter wine is properly dismissed, where it appears that plaintiffs' predecessor in title had acquired a license to manufacture the wine and sell the same under the name in question from the defendant, and that, while the defendant had been out of business for some years, he had not abandoned the right to manufacture and sell the article under the name in question, nor had he granted an exclusive right to the plaintiff's predecessor.

Argued October 23, 1912. Appeal, No. 35, Oct. T., 1912, by plaintiffs, from decree of C. P., Allegheny Co., First T., 1912, No. 122, dismissing bill in equity in case of William Friedman and Herman Konig, partners doing business as Hollander Drug Company v. Hollander Brothers Drug Company. Before Fell, C. J., Brown, Mestrezat, Stewart and Moschzisker, JJ. Affirmed.

Bill in equity for an injunction.

Swearingen, P. J., found facts and rendered an opinion as follows:

The plaintiffs in their bill alleged that they had, on November 5, 1909, acquired the business theretofore conducted by Adolph Hollander under the name, "Hollander Drug Co."; that he had been manufacturing and selling certain medicines under trade names and trade marks, used exclusively by himself, among which was a bitter wine called "Telinko," said name appearing upon

the labels of the bottles in large script type; that said Adolph Hollander had used said trade name or trade mark since January 1, 1903, and on July 23, 1907, had registered it with the secretary of the commonwealth of Pennsylvania; and that the defendant, for the purpose of deceiving those who might desire to purchase plaintiffs' product, had commenced the manufacture of an inferior preparation, which it had placed upon the market under the same name, "Telinko," and in bottles of the same size and appearance as the plaintiffs', upon which an intentionally simulated label was placed. The plaintiffs, alleging that they had been and were being damaged, prayed for a discovery, for an accounting, and for an injunction, restraining the defendant from using, in connection with the manufacture, advertisement, and sale of medicinal preparations, the word, "Telinko," or any like name. In its answer, the defendant denied that Adolph Hollander ever had any exclusive rights in the making of the said bitter wine or in the trade name "Telinko," and denied that the plaintiffs had acquired any exclusive rights therein. It averred that Joseph M. Hollander, the president of defendant company, had originated said bitter wine and the name "Telinko," that he had given to said Adolph Hollander a mere license to make the preparation and to use the name, and that said Joseph M. Hollander had never abandoned his proprietary rights in the said preparation and trade mark, which now belong to the defendant.

From the evidence we find the following:

### FINDINGS OF FACT.

One. The plaintiffs, William Friedman and Herman Konig, are partners doing business as the Hollander Drug Company and they are in the business of manufacturing chemists in the Borough of Braddock, Allegheny County, Pennsylvania. The defendant, the Hollander Bros. Drug Company, is a corporation under

the laws o. Pennsylvania, and its principal place of business is in the said Borough of Braddock. It was incorporated in the year 1907. Joseph M. Hollander is the president of the said corporation and is a large stockholder therein.

Two. For some years prior to 1899, Adolph Hollander, a brother of the said Joseph M. Hollander, was engaged in the wholesale liquor business in the said Borough of Braddock. He became financially embarrassed and, on January 19, 1899, at No. 148 in Bankruptcy, he was adjudged a voluntary bankrupt in the United States District Court for the Western District of Pennsylvania. Prior to said adjudication in bankruptcy he had no experience in the preparation of medicines and he never was a chemist.

Three. Prior to 1901, the said Joseph M. Hollander was a chemist engaged in manufacturing patent medicines and in the drug business, in the said Borough of Braddock. About September, 1901, he originated a formula for the preparation of a bitter wine called in the Hungarian language "Horke Vino," which he manufactured and sold. About the same time, he, with the assistance of one G. F. Ebers, originated the word "Telinko," which really had no meaning but was believed to resemble in sound and spelling foreign words; and the said Ebers designed for him a label for the outside of the amber colored bottles in which said bitter wine was contained, having thereon the words,

"The new discovery, Elixir of 'Telinko,' bitter
wine, the greatest wonder of the age. Horke
Vino, Hollander Drug Company."

the word "Telinko" being printed in script type of red color. Said Joseph M. Hollander manufactured and sold said bitter wine under the name "Telinko" for some time at his drug store. Some time afterwards—the date is not made clear in the evidence—he quit the drug business.

Four. Adolph Hollander was still a bankrupt. He

desired to engage in some business. At his solicitation, Joseph M. Hollander gave him the use of a number of formulæ for the compounding of medicines, among which was the formula for the bitter wine "Telinko." Just when this occurred is not made clear in the evidence. It is averred in the third paragraph of the bill that Adolph Hollander had used said trade name since January 1, 1903. But Joseph M. Hollander did not give to Adolph Hollander an exclusive right in said formula for the preparation of "Horke Vino" nor did he give Adolph the exclusive right to use the name "Telinko" in connection therewith.

Five. Thereafter Adolph Hollander manufactured and sold "Telinko," in very considerable quantities, and built up a large trade, with the knowledge of said Joseph M. Hollander. This continued until his death. Said preparation was placed in quart bottles which were packed in cases containing one dozen bottles each. Each bottle had placed on it a label. Before placing said labeled bottles in boxes, they were each wrapped in cardboard cartons. On July 3, 1907, Adolph Hollander had said trade name "Telinko" registered with the secretary of the commonwealth of Pennsylvania. Joseph M. Hollander was not aware of said registration until this litigation commenced.

Sixth. Adolph Hollander died August 30, 1909, testate, having made his will dated the 21st day of August, 1909, which was duly probated after his death and the same now remains on file in the register's office of said County of Allegheny. In and by said will the testator devised and bequeathed all his property to his widow, Sophia Hollander, and appointed her executrix; and letters testamentary were issued to her.

Seventh. On the 5th day of November, 1909, said William Friedman and Herman Konig acquired the business theretofore conducted by the said Adolph Hollander until the time of his death, from Sophia Hollander, executrix, and sole legatee, under the will of

the said Adolph Hollander, and under said agreement acquired whatever rights the said Adolph Hollander had in his lifetime and at the time of his death in the trade mark "Telinko."

Eighth.   The Hollander Bros. Drug Co. was incorporated in 1907, and Joseph M. Hollander became and still is the president.   The same year said Joseph A. Hollander, for the defendant, began the preparation of bitter wine, similar to that which he had previously manufactured, but under the name "Cintoria."   This name was adopted in compliance with what was thought to be the proper construction of the Pure Food and Drug Act of Congress, which requires the name of the mixture to bear some resemblance to the names of the ingredients.

About September 1, 1910, said Joseph M. Hollander, for said defendant, began the manufacture and sale of "Telinko," which is prepared for sale in amber colored bottles, each having thereon a label.   The said labeled bottles are placed in cardboard cartons, each having thereon a wrapper.

Ninth.   Both preparations are sold to the trade in said original packages with the cartons wrapped around each bottle, the cartons being attached when separate bottles are sold.   No attempt was made by the defendant to copy or simulate the wrappers and labels used by the plaintiffs in the manufacture and sale of "Telinko." These markings were used by defendant in the belief that Joseph M. Hollander had never parted with his right to use the same; and he never did abandon his right to make and sell said preparation of bitter wine, nor did he abandon his right to use the word "Telinko" in connection therewith.

OPINION.

The testimony in this case is of the most conflicting character.   The evidence indicates that Joseph M. Hollander originated the formula for a bitter wine called

"Horke Vino" in the latter part of the year 1901. He
was a chemist and had a drug store; and he had already
originated a number of formulæ for patent medicines.
It is also evident that said Joseph M. Hollander and G.
F. Ebers about the same time originated the word "Tel-
inko," and prepared a label for the bottles in which the
preparation was to be put up and sold. Mr. Ebers testi-
fied that this was the way the word and label originated;
and this account appears more credible than that given
by the plaintiffs' witnesses. Adolph Hollander never
was a chemist. He had been in the wholesale liquor busi-
ness and had become a bankrupt in 1899. He, therefore,
had no business and no assets. The evidence indicates
that he and Joseph M. Hollander were associated to-
gether in some way for a time. A corporation called the
Hollander Drug Company was organized in 1899, and
they both appear to have been interested in it. A part-
nership by the same name was also formed between them
and one Israel Rosenbloom, in the year 1900, but just
how the business was conducted is not clear. Mr. Rosen-
bloom was upon the stand and did not appear to know
anything about the partnership, although he admitted
his signature to the articles. But he did testify that
what business they did was under the corporation, and
he exhibited a number of certificates of stock which had
been issued to him. The plaintiffs contended that the
right to the formula for "Horke Vino," and the right to
use the name "Telinko," were in the partnership, and
that Adolph Hollander became the sole owner thereof
upon the dissolution of the partnership, Joseph and
Rosenbloom having transferred their interests to him.
A dissolution agreement, dated April 25, 1901, was pro-
duced. But "Telinko" was not originated until long
after said dissolution and, therefore, the title to that
formula was never in the partnership.

We, therefore, think that the defendant's account of
the transaction is the more likely. It is substantially
this: Adolph, being bankrupt, solicited from Joseph the

use of the formulæ so that he might get into some business.   Joseph finally gave Adolph the right to use a number of formulæ for patent medicines, which the former had originated, among them being "Telinko," and Adolph did thereafter, in that way, begin the manufacture and sale of "Telinko," Joseph for a time making it for him.   Some time afterwards Joseph went out of the drug business, but the evidence does not show that he ever abandoned his rights to his formula and the name.   Adolph had the right to use the formula and to make it, but Joseph never parted with his original rights. This being true, the registration of the trade mark made by Adolph did not and could not prejudice Joseph's right to manufacture and sell the article which he had originated.   And, consequently, Adolph's right to use the formula and the said trade name cannot be held to be exclusive.

The court dismissed the bill.   Plaintiffs appealed.

*Error assigned* was the decree of the court dismissing the bill.

*Joseph Stadtfeld,* for appellants.

*Charles F. Patterson,* with him *Alexander Gilfillan,* for appellee.

Per Curiam, January 6, 1913:

The decree is affirmed at the cost of the appellant on the findings of fact and the opinion of the court by Judge Swearingen.